UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW HAMPSHIRE

James B. Currier

                    v.                    Civil No. 06-cv-328-PB

Hillsborough County Department
of Corrections, et al.

## REPORT AND RECOMMENDATION

Proceeding pro se, James Currier has filed this action[1]
pursuant to 42 U.S.C. § 1983 against the Hillsborough County
Department of Corrections ("HCDC") and employees of the
Hillsborough County House of Corrections ("HCHC").[2]  The
complaint is before me for preliminary review to determine
whether, among other things, it states any claim upon which

---

[1]Currier filed a Complaint (document no. 1) on September 5,
2006 and a Motion to Amend Complaint (document no. 15) containing
additional defendants and claims on October 17, 2006.  I will
accept the amended complaint and consider the information
contained in both documents, in the aggregate, as the complaint
in this matter.

[2]Currier names the following individual defendants to this
action: HCHC Superintendent James O'Mara, HCHC Officers Clement,
Nelson, Torres, Sapienza, Sierra, Cooper, Archambault, Riley,
Brown, Gardini, and Cunningham.

relief might be granted.[3]  See 28 U.S.C. § 1915A; United States District Court for the District of New Hampshire Local Rule ("LR") 4.3(d)(2).  For the reasons stated herein, I direct, in an Order issued simultaneously with this Report and Recommendation, that the claims alleging excessive force and psychological harm proceed against all of the named individual defendants to this action, the claims alleging inadequate medical care and denial of access to the courts proceed against defendant O'Mara, the claims alleging retaliatory disciplinary action and a deprivation of the right to petition the government for a redress of grievances proceed against defendant Cooper and the endangerment claim proceed against defendant Gardini.  I recommend that the claims alleging a denial of adequate mental health care and destruction of personal property, as well as defendant HCDC, be dismissed from this action.

### Standard of Review

Under this Court's local rules, when an incarcerated plaintiff commences an action pro se and in forma pauperis, the

---

[3]The defendants have already filed an answer, in response to being served a copy of the initial complaint with a motion for temporary restraining order filed by Currier.  The answer is premature and I will not consider it in conducting this preliminary review.

magistrate judge is directed to conduct a preliminary review and
to prepare a report and recommendation determining whether the
complaint or any portion thereof should be dismissed because:

> (i) the allegation of poverty is untrue, the
> action is frivolous, malicious, or fails to state
> a claim upon which relief may be granted, or seeks
> monetary relief from a defendant who is immune
> from such relief under 28 U.S.C. § 1915A(b); or
>
> (ii) it fails to establish subject matter
> jurisdiction under Fed. R. Civ. P. 12(b)(1).

LR 4.3(d)(2).  In conducting the preliminary review, the Court
construes pro se pleadings liberally.  See Ayala Serrano v.
Lebron Gonzales, 909 F.2d 8, 15 (1st Cir. 1990) (following
Estelle v. Gamble, 429 U.S. 97, 106 (1976) to construe pro se
pleadings liberally in favor of the pro se party).  "The policy
behind affording pro se plaintiffs liberal interpretation is that
if they present sufficient facts, the court may intuit the
correct cause of action, even if it was imperfectly pled."  Ahmed
v. Rosenblatt, 118 F.3d 886, 890 (1st Cir. 1997), cert. denied,
Ahmed v. Greenwood, 522 U.S. 1148 (1998).

At this preliminary stage of review, all factual assertions
made by the plaintiff and inferences reasonably drawn therefrom
must be accepted as true.  See Aulson v. Blanchard, 83 F.3d 1, 3
(1st Cir. 1996) (stating the "failure to state a claim" standard

3

of review and explaining that all "well-pleaded factual averments," not bald assertions, must be accepted as true).  This review ensures that pro se pleadings are given fair and meaningful consideration.  See Eveland v. Dir. of C.I.A., 843 F.2d 46, 49 (1st Cir. 1988).

<u>Background</u>

On July 1, 2006, at 4:30 a.m., James Currier was being booked into the HCHC.  During booking, he was restrained with handcuffs and leg restraints.  Currier alleges that after he was restrained, HCHC officers lifted him off the ground, carried him into a cell, and beat him, while other officers looked on and allowed the beating to occur without intervening.  As a result of the beating, and the fact that his handcuffs were too tight at the time, Currier alleges he suffered from possible nerve damage, numbness, and persistent pain in his hands, injuries to his back, neck and shoulders, as well as serious psychological harm.  Currier further alleges that he did not receive any medical care for these injuries at the HCHC despite his repeated requests for medical attention.  Currier also claims that his glasses were damaged during the beating and not repaired or replaced.

On July 22, 2006, Currier filed a grievance regarding the July 1 incident.  The Captain who responded to the grievance determined that it was unfounded as Currier's "intoxication level and . . . actions lead the [HCHC officers] and Manchester Police to restrain [him] after charging officer Clement."  On August 4, 2006, O'Mara reviewed the grievance and determined that no action was required on his part.

Currier further alleges that he has a history of depression and mental illness.  Upon his admission to HCHC, Currier made the HCHC staff aware of his mental health history, and the fact that he had previously been prescribed psychiatric medication.  Despite this information, and Currier's requests to see a psychiatrist and for appropriate medication, the HCHC staff did not provide Currier with any mental health treatment.

On September 26, 2006, Currier was overheard by Officer Cooper telling other inmates that he was going to file a class action lawsuit in the federal court regarding the conditions of confinement at the HCHC.[4]  Currier alleges that Cooper, acting in retaliation for his lawsuit and Currier's grievance regarding the

_____

[4]On September 28, 2006, Currier filed a complaint in this Court alleging a multi-plaintiff § 1983 action against the HCDC and O'Mara.  See Currier v. Hillsborough County Dep't of Corrs., et al., Civ. No. 06-fp-370.

July 1 incident, filed a disciplinary charge for disorderly conduct against Currier.  Currier alleges that the institutional offense of disorderly conduct is so vague that the HCHC regulations did not make him aware of what conduct on his part would violate the regulation.

Currier further complains that, as a maximum security inmate, he was denied access to the law library.  Currier could obtain legal materials only by "cell delivery" without any additional assistance, and therefore did not have the option of researching materials that he did not already know he needed. Currier alleges, nonspecifically, that he has been prejudiced in the prosecution of his civil case against the HCHC defendants because he has been unable to conduct adequate research.

On October 1, 2006, at 8:30 p.m., Officer Gardini falsely told two inmates that their cell change request had been denied because Currier had filed a grievance complaining about their request.  Currier alleges that Gardini, in retaliation for Currier filing his lawsuit and grievance, intentionally placed him in danger by attempting to set Currier up to be harmed by other inmates.

Currier states that he was a pretrial detainee from July 1, 2006 until August 8, 2006, when he was sentenced to a term of imprisonment at the HCHC.  He remained incarcerated at the HCHC as a sentenced inmate until October of 2006.

Discussion[5]

1.   <u>Section 1983 Claims and Currier's Incarcerative Status</u>

Section 1983 creates a cause of action against those who, acting under color of state law, violate federal constitutional or statutory law.  <u>See</u> 42 U.S.C. § 1983[6]; <u>Parratt v. Taylor</u>, 451 U.S. 527, 535 (1981); <u>Wilson v. Town of Mendon</u>, 294 F.3d 1, 6 (1st Cir. 2002).  In order to be held liable for a violation under § 1983, a defendant's conduct must have been a cause in

---

[5]The claims as identified herein will be considered for all purposes to be the claims raised in the complaint.  If Currier disagrees with this identification of the claims, he must do so by proper objection to this Report and Recommendation or by properly moving to amend his complaint.

[6]42 U.S.C. § 1983 provides that:

> Every person who under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory of the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law . . . .

fact of the alleged constitutional deprivation.  See Monell v.
Dep't of Soc. Servs., 436 U.S. 658, 692 (1978); Soto v. Flores,
103 F.3d 1056, 1061–62 (1st Cir.), cert. denied, 522 U.S. 819
(1997).  The particular constitutional provision that an inmate
may assert in a § 1983 action depends on his or her incarcerative
status at the time of the alleged violation.

> A pretrial detainee has a Fourteenth Amendment
> right to be free from punishment prior to
> conviction.  While a pretrial detainee may be
> disciplined for a specific institutional infraction
> committed during the period of his detention, the
> discipline imposed must be roughly proportionate to
> the gravity of the infraction.  An arbitrary, or
> disproportionate sanction, or one that furthers no
> legitimate penological objective, constitutes
> punishment (and, thus, is proscribed by the
> Fourteenth Amendment).

Surprenant v. Rivas, 424 F.3d 5, 13 (1st Cir. 2005) (citing Bell
v. Wolfish, 441 U.S. 520, 535, 538-9 (1979) and Collazo-Leon v.
U.S. Bureau of Prisons, 51 F.3d 315, 318 (1st Cir. 1995)).
Accordingly, I find that Currier's claims that arose prior to
August 8, 2006 alleging unconstitutionally punitive conditions of
confinement arise under the Fourteenth Amendment.  The prison
condition claims that arose or continued after August 8, 2006,
when Currier was a sentenced inmate are cognizable under the

Eighth Amendment's prohibition against cruel and unusual punishment.

2.  <u>Excessive Force/Failure to Protect/Psychological Harm</u>

As a detainee, Currier is protected by the Due Process Clause of the Fourteenth Amendment from "the use of excessive force that amounts to punishment." <u>Graham v. Connor</u>, 490 U.S. 386, 395 n.10 (1989); <u>see</u> <u>Garcia v. City of Boston</u>, 115 F. Supp. 2d 74, 81 (D. Mass. 2000), <u>aff'd</u>, 253 F.3d 147 (1st Cir. 2001). The use of excessive force by a law enforcement official against a pretrial detainee is actionable under § 1983. <u>Town of Mendon</u>, 294 F.3d at 6 (citing <u>Graham</u>, 490 U.S. at 395–96, 395 n.10).  In determining whether a plaintiff has stated a claim for unconstitutionally excessive force, the court should look to the following four factors: (1) "the need for application of force," (2) "the relationship between the need and the amount of force that was used," (3) "the extent of injury inflicted," and (4) "whether the force was applied in good faith to maintain or restore discipline or maliciously and sadistically for the very purpose of inflicting harm." <u>Garcia</u>, 115 F.Supp.2d at 81.

Further, a state actor has a duty to protect incarcerated prisoners from harm by another state actor. <u>DeShaney v.</u>

Winnebago County, 489 U.S. 189, 199 (1989), Davis v. Rennie, 264
F.3d 86, 98 (1st Cir. 2001), cert. denied, Rennie v. Davis, 535
U.S. 1053 (2002).  An officer may be held liable under § 1983
"for his failure to intervene in appropriate circumstances to
protect an arrestee from the excessive use of force by his fellow
officers."  Gaudreault v. Municipality of Salem, 923 F.2d 203,
207 n.3 (1st Cir. 1990), cert. denied, 500 U.S. 956 (1991); see
also McHenry v. Chadwick, 896 F.2d 184, 188 (6th Cir. 1990)
(prison guard has a duty to protect a prisoner from the use of
excessive force by another prison guard).  Gaudreault's
requirement that officers protect arrestees applies also to a
requirement that pretrial detainees be protected by prison
employees.  923 F.2d at 207 n.3.

     Applying the factors set out in Garcia to this case, I find
that Currier alleges that he was beaten in a cell after he was
restrained in handcuffs.  While the grievance attached to the
complaint raises a question as to Currier's conduct prior to the
incident alleged that may have justified restraining Currier,
nothing in the pleadings suggests that any action on Currier's
part warranted excessively tight handcuffs or a beating severe
enough to cause lasting pain and damage.  Currier has alleged

that force was used against him disproportionately to any need that may have existed for restraint, and that as a result, he sustained significant injuries. Currier's allegations also indicate that the force applied was malicious and committed with the intent to harm. Accordingly, I find that Currier has stated a claim for excessive force for the July 1 beating incident.

Currier also alleges a claim of psychological harm. The Prison Litigation Reform Act, 42 U.S.C. § 1997e(e) provides that "[n]o Federal civil action may be brought by a prisoner confined in jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury." Here, where Currier has alleged that physical injury accompanied the psychological harm, I find that he has properly alleged a claim for psychological or mental harm, and I will allow that claim to proceed against each of the individual named defendants to this action.

Currier has named a number of officers as defendants to this action. With the exception of defendant O'Mara, who is sued in a supervisory capacity for failing to exercise control over officers he knew to be violent, Currier alleges generally that the defendant officers either participated in or observed the

July 1 beating.  At this time, Currier has not provided more specific information about the actions of each individual officer.  While he may well be required to do so in order to prove his claims, for purposes of preliminary review, I will liberally construe the claim as naming each defendant officer as present at the July 1 beating, either as a participant, observer, or in the case of O'Mara, a supervisor, and direct that the excessive force and failure to protect claims proceed against each of the named defendants.

3.  <u>Inadequate Medical and Mental Health Care</u>

The Eighth Amendment protects prison inmates from prison officials acting with deliberate indifference to their serious medical needs.[7]  <u>See</u> <u>Farmer v. Brennan</u>, 511 U.S. 825, 831 (1994). To assert a viable cause of action for inadequate medical care, an inmate must first state facts sufficient to allege that the plaintiff has a serious medical need for which adequate care has not been provided.  <u>Farmer</u>, 511 U.S. at 831; <u>Rhodes v. Chapman</u>, 452 U.S. 337, 347 (1981); <u>Estelle</u>, 429 U.S. at 106.  The inmate

---

[7]The Fourteenth Amendment is at least as protective of a pretrial detainee's right to medical and mental health care as claims that arise under the Eighth Amendment.  As plaintiff states an Eighth Amendment claim, I find that he also states a claim under the Fourteenth Amendment for the period he was detained pretrial.

must then allege that a responsible prison official was aware of the need or of the facts from which the need could be inferred, and still failed to provide treatment.  <u>Estelle</u>, 429 U.S. at 106. A serious medical need is one that involves a substantial risk of serious harm if it is not adequately treated.  <u>Barrett v. Coplan</u>, 292 F. Supp. 2d 281, 285 (D.N.H. 2003); <u>Kosilek v. Maloney</u>, 221 F. Supp. 2d 156, 180 (D. Mass. 2002) (citing <u>Farmer</u>, 511 U.S. at 835–47); <u>see</u> <u>also</u> <u>Gaudreault</u>, 923 F.2d at 208 (defining a serious medical need as one "that has been diagnosed by a physician as mandating treatment, or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.") (internal citations omitted).  The Eighth Amendment applies to a prison's administration of medical care, including mental health care.  <u>See</u> <u>DesRosiers v. Moran</u>, 949 F.2d 15, 19 (1st Cir. 1991); <u>Torraco v. Maloney</u>, 923 F.2d 231, 234 (1st Cir. 1991) (recognizing deliberate indifference to an inmate's mental health needs violates the Eighth Amendment).

"[A]dequate medical care" is treatment by qualified medical personnel who provide services that are of a quality acceptable when measured by prudent professional standards in the community, tailored to an inmate's particular medical needs, and that are

based on medical considerations.  <u>United States v. DeCologero</u>,
821 F.2d 39, 42–43 (1st Cir. 1987).  This does not mean that an
inmate is entitled to the care of his or her choice, simply that
the care must meet minimal standards of adequacy.  Deliberate
indifference may be found where the medical care provided is "so
clearly inadequate as to amount to a refusal to provide essential
care." <u>Torraco</u>, 923 F.2d at 234.  Constraints inherent in a
prison setting may affect the choice of care provided, and may be
relevant to whether or not prison officials provided inadequate
care with a deliberately indifferent mental state.  <u>Wilson v.
Seiter</u>, 501 U.S. 294, 302 (1991).

Currier has alleged that he suffered serious injuries to his
hands, back, neck and shoulders on July 1, and that he was denied
any medical care, despite his complaints of pain and possible
nerve damage.  I find that Currier adequately alerted the HCHC
staff to his need for medical care such that the denial of care
may constitute deliberate indifference to his serious medical
needs for those HCHC employees who were notified and who were
responsible for denying Currier care.  Accordingly, while Currier
has stated sufficient facts to allege Eighth and Fourteenth
Amendment violations for the denial of medical care during his

14

stay at the HCHC, he has failed to name any defendants directly involved in the denial of medical care to this claim at this time.  Currier has adequately alleged, however, that defendant O'Mara was given notice, in the July 22 grievance, of Currier's injuries and failed to assure that Currier received adequate medical care.  Accordingly, I will allow this claim to proceed against O'Mara.  If Currier intends to pursue this claim against any other defendants, he must identify the specific defendants directly involved in denying him medical care and seek to add them to his complaint by properly filing a motion to amend.[8]

---

[8]If Currier intends to pursue this claim against appropriate defendants, he must obtain the names of those defendants in discovery, if he does not now know them.  After obtaining the names, Currier will have to properly move to amend his complaint. To this end, upon service of this claim on the defendants listed, Currier can serve those defendants with interrogatories to obtain the full names of any appropriate defendants that are not presently named in the complaint, pursuant to Fed. R. Civ. P. 33(a) which states in pertinent part:

> Without leave of court or written stipulation, any party may serve upon any other party written interrogatories, not exceeding 25 in number including all discrete subparts, to be answered by the party served or, if the party served is a public or private corporation or a partnership or association or governmental agency, by an officer or agent, who shall furnish such information as is available to the party.

If Currier is not in possession of the names of particular

Currier has also alleged that he has serious mental health conditions that have been identified by medical or mental health personnel as requiring psychiatric treatment and medication. Currier alleges that the defendants to this claim were aware of Currier's mental health needs and have denied him adequate treatment for those needs. I find therefore that Currier has adequately alleged a claim of deprivation of adequate mental health care, by virtue of the defendants' deliberate indifference to his mental health needs. Again, however, Currier has failed to name any specific defendant responsible for denying his access to adequate mental health care, and he will have to obtain the names of appropriate defendants to this claim and then amend his complaint to allege particular defendants to this claim.

4.   Retaliatory Disciplinary Charge

Ordinarily, when a prisoner is subjected to a disciplinary sanction, he must prove that the sanction itself was so atypical of the normal incidents of prison life, and imposed such a hardship, that he was entitled to due process in order for the

---

medical care providers within the HCHC who he believes to be appropriate defendants to this action, he is entitled to receive a copy of his medical records, if any such records exist, which should contain the names of the HCHC medical personnel responsible for his care and treatment.

sanction to be constitutionally effected.  <u>Sandin v. Conner</u>, 515
U.S. 472, 483-84 (1995).  Here, Currier has not stated what
sanction he was subjected to as a result of the disciplinary
proceedings that followed the disorderly conduct charge.
Therefore, Currier has not yet stated a claim for improper
institutional discipline based solely on being charged with a
vaguely-worded offense.

However, the First Amendment's guarantee of a right to
petition the government for a redress of grievances has been
characterized as "among the most precious of the liberties
safeguarded by the Bill of Rights."  <u>United Mine Workers v. Ill.</u>
<u>State Bar Ass'n</u>, 389 U.S. 217, 222 (1967).  The right of
petition, in the prison context, means that inmates must be
"permit[ted] free and uninhibited access . . . to both
administrative and judicial forums for the purpose of seeking
redress of grievances against state officers."  <u>Sostre v.</u>
<u>McGinnis</u>, 442 F.2d 178, 200 (2d Cir. 1971) (en banc), <u>cert.</u>
<u>denied</u>, <u>Sostre v. Oswald</u>, 404 U.S. 1049 (1972) and <u>Oswald v.</u>
<u>Sostre</u>, 405 U.S. 978 (1972), <u>overruled on other grounds by</u>
<u>Davidson v. Scully</u>, 114 F.3d 12, 13 (2d Cir. 1997).
"[I]ntentional obstruction of a prisoner's access to the courts

is precisely the sort of oppression that . . . section 1983 [is] intended to remedy." Franco v. Kelly, 854 F.2d 584, 588 (2d Cir. 1988) (internal quotations omitted).

A prisoner's right to petition the government for a redress of grievances under the First Amendment precludes prison officials from retaliating against a prisoner by punishing him for actions he takes in the exercise of those rights. See Bradley v. Hall, 64 F.3d 1276, 1279 (9th Cir. 1995). While prison officials may make policy that is reasonably related to legitimate penological interests, even at the expense of certain constitutional rights, Beard v. Banks, ___ U.S. ___, 126 S. Ct. 2572, 2579 (2006) (citing Turner v. Safley, 482 U.S. 78, 89-90 (1987)), "actions otherwise supportable lose their legitimacy if designed to punish or deter an exercise of constitutional freedoms." Ferranti v. Moran, 618 F.2d 888, 892 n.4 (1st Cir. 1980) (citing McDonald v. Hall, 610 F.2d 16, 18 (1st Cir. 1979)); see also Goff v. Burton, 7 F.3d 734, 738 (8th Cir. 1993), cert. denied, 512 U.S. 1209 (1994) (prison officials cannot lawfully impose a disciplinary sanction against a prisoner in retaliation for the prisoner's exercise of his constitutional right).

Currier alleges that he was subjected to the institutional disciplinary process as a result of discussing his pending legal action against the HCHC, which he has described as a class action or multiple plaintiff suit, with other inmates who are or could be plaintiffs in the action.  Therefore, I find that Currier has stated a claim that defendant Cooper retaliated against him for exercising his constitutional right to petition the government for a redress of grievances, and in the Order issued simultaneously wtiht his Report and Recommendation, I will direct that this claim proceed against Cooper.

5.   <u>Denial of Law Library/Access to the Courts</u>

Currier alleges that he was denied access to adequate legal resources at the HCHC due to being placed in a classification where he could only receive "cell delivery" of legal materials, and that as a result, his prosecution of his civil case against the HCHC was impaired.  A claim alleging a denial of access to the courts depends on the plaintiff alleging that the availability of legal resources, including the law library and other sources of legal information, taken as a whole, were inadequate to meet his need to conduct legal research.  <u>Bounds v. Smith</u>, 430 U.S. 817, 832 (1977).  The plaintiff must also allege

that his legal status was harmed by a deprivation of legal

materials.  Lewis v. Casey, 518 U.S. 343, 351 (1996).  Here,

Currier claims that he was denied the ability to conduct research

to the detriment of one or more of his pending civil cases.

While Currier is nonspecific in his allegation of prejudice, I

find that he has alleged the minimum facts necessary to allow

this claim to proceed.  While Currier has not named any specific

defendants to this action, he does allege that the reason he was

only able to receive "cell delivery" of legal materials was due

to policy concerning maximum security inmates.  Accordingly, I

find that Currier has sufficiently alleged this claim against

O'Mara, who is responsible for ensuring that policies at the HCHC

do not impede the constitutional rights of inmates, to allow it

to proceed against O'Mara at t his time.  If Currier wishes to

name other defendants to this action, he must do so by properly

moving to amend his complaint.

6.  Endangerment

      The safety and security of all prisoners is protected by the

Constitution.  See e.g., Youngberg v. Romeo, 457 U.S. 307, 315

(1982).  An Eighth Amendment claim arises only if an official

inflicts "cruel and unusual punishment" by knowing of and

disregarding "an excessive risk to inmate health or safety."
Farmer, 511 U.S. at 837, 838; Giroux v. Somerset County, 178 F.3d
28, 32 (1st Cir. 1999) (explaining how the official must have "an
actual, subjective appreciation of risk").  "Prison officials
have a responsibility not to be deliberately indifferent to the
risk to prisoners of violence at the hands of other prisoners."
Burrell v. Hampshire County, 307 F.3d 1, 7 (1st Cir. 2002)
(citing Farmer, 511 U.S. at 833).

Here, Currier alleges that Gardini intentionally gave
inmates false information that would render them likely to
physically harm Currier, and that Gardini's intention was that
Currier be harmed.  These allegations suffice to state an
endangerment claim, and I will direct, in an Order issued
simultaneously with this Report and Recommendation, that the
endangerment claim proceed against Gardini.

7.   Property Claims

Currier alleges that during the July 1 beating, his glasses
were damaged, but never repaired or replaced by the HCHC.  Claims
alleging the theft, damage, loss or other misappropriation of
property are not actionable under 42 U.S.C. § 1983 where, as
here, the state has an adequate post-deprivation remedy

available.  Hudson v. Palmer, 468 U.S. 517, 533 (1984); see N.H.
Rev. Stat. Ann. ("RSA") 541-B:9(II) & (IV), and 541-B:14 (1997)
(providing a post-deprivation means of recouping property loss
attributable to the State).  Therefore, I recommend this claim be
dismissed from this action.

8.  Supervisory Liability

    "Supervisory liability under § 1983 cannot be predicated on
a respondeat theory, but only on the basis of the supervisor's
own acts or omissions."  Aponte Matos v. Toledo Davila, 135 F.3d
182, 192 (1st Cir. 1998) (internal citations omitted).  A
supervisor must be "either was a primary actor involved in, or a
prime mover behind, the underlying violation."  Camilo-Robles v.
Zapata, 175 F.3d 41, 43-44 (1st Cir. 1999).  There must be "an
affirmative link, whether through direct participation or through
conduct that amounts to condonation or tacit authorization" to
the violation alleged.  Id. at 44.  A municipal employer may be
held liable for its failure to properly train its officers, if
such a failure "amounts to deliberate indifference to the rights
of persons with whom the [officers] come into contact," and where
a specific deficiency in training is the "moving force" behind a
constitutional injury.  Town of Mendon, 294 F.3d at 6 (citing

<u>City of Canton v. Harris</u>, 489 U.S. 378, 388-89, 391 (1989)).

Currier has named O'Mara as a defendant to this action in his

supervisory capacity.  Currier alleges that O'Mara was aware of

the propensity of some of the HCHC officers, named as defendants

here, toward violence, and yet failed to do anything to prevent

the violence against Currier from occurring.  Currier further

alleges that O'Mara neglected to do anything to protect Currier's

rights in response to Currier's grievance regarding the July 1

incident and the untreated injuries received that day.  These

allegations suffice to state claims for excessive force,

psychological harm, and medical care against O'Mara in his

supervisory capacity, and I will so direct in the Order issued

simultaneously with this Report and Recommendation.

9.   <u>Municipal Liability</u>

      Currier has named the HCDC as a defendant to this action.

Naming a county agency is another way of naming the county as a

defendant, or, identifying the government entity in the stead of

a person responsible for the alleged conduct.  Municipalities and

local government entities are "persons" within the meaning of §

1983.  <u>See</u> <u>Monell</u>, 436 U.S. at 690.  Under New Hampshire law,

counties, such as Hillsborough, are considered local governmental

units.  See RSA 507–B:1 (1997) (defining "governmental unit" as

"any political subdivision within the state including any county,

city, town . . . but [not including] the state or any department

or agency thereof.").  In order to maintain an official capacity

suit against the county of Hillsborough as a municipality under §

1983, the claim must be grounded upon an unconstitutional

municipal custom or practice and two requirements must be met.

"First, the custom or practice must be attributable to the

municipality, i.e., it must be 'so well settled and widespread

that the policymaking officials of the municipality can be said

to have either actual or constructive knowledge of it yet did

nothing to end the practice.'"  Miller v. Kennebec County, 219

F.3d 8, 12 (1st Cir. 2000) (quoting Bordanaro v. Mcleod, 871 F.2d

1151, 1156 (1st Cir.), cert. denied, Everett v. Bordanaro, 493

U.S. 820 (1989)).  Second, the custom must have been the cause of

and "the moving force" behind the deprivation of constitutional

rights.  Wood v. Hancock County Sheriff's Dep't, 354 F.3d 57, 64

(1st Cir. 2003) (citing Miller, 219 F.3d at 12).

Currier has not asserted any facts that demonstrate that the

county of Hillsborough engaged in a custom or policy of allowing

or enabling employees of the HCHC to violate the plaintiff's

24

rights in the manner described in Currier's complaint.  I find, therefore, that Currier has not stated a claim against the HCDC and I recommend that the county defendant be dismissed from this action.

<u>Conclusion</u>

For the foregoing reasons, I recommend that the HCDC, and the claims alleging denial of adequate mental health care and destruction of personal property, be dismissed from this action. In an Order issued simultaneously with this Report and Recommendation, I direct service of the excessive force and psychological harm claims against all of the named individual defendants to this action, the inadequate medical care and right of access to the courts claims against O'Mara, the retaliatory disciplinary action and denial of the right to petition the government for a redress of grievances claims against Cooper, and the endangerment claim against Gardini.

Any objections to this Report and Recommendation must be filed within ten (10) days of receipt of this notice.  Failure to file objections within the specified time waives the right to appeal the district court's order.  <u>See</u> <u>Unauth'd Practice of Law</u>

Comm. v. Gordon, 979 F.2d 11, 13-14 (1st Cir. 1992); United States v. Valencia-Copete, 792 F.2d 4, 6 (1st Cir. 1986).


                                    /s/ James R. Muirhead
                                    James R. Muirhead
                                    United States Magistrate Judge

Date:      November 28, 2006

cc:        James B. Currier, pro se